(89 App. Div. 131.)

### McDONALD v. MAYOR, ETC., OF CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County. December, 1903.)

**1. MECHANICS' LIENS—NOTICE—VERIFICATION.**
 The verification by the agent of a materialman of a notice of lien filed under the Consolidation Act, Laws 1882, p. 440, c. 410, § 1825, is sufficient where it states that the statements in the notice "are true to his own knowledge or information and belief."

**2. SAME—UNDERTAKING TO DISCHARGE.**
 Where an undertaking has been given to discharge a mechanic's lien, the sureties are not necessary parties to a foreclosure of the lien, but may be interpleaded in the suit or be made defendants in a separate action on the bond.

**3. SAME—ASSIGNMENT OF MONEY DUE.**
 The lien of a materialman is not defeated by an assignment by the contractor of his rights to moneys due from the city for whom the work was done, where the assignment was given only as collateral security, and there is a surplus due the contractor.

Action by John B. McDonald against the mayor, aldermen, and commonalty of the city of New York and others to foreclose a mechanic's lien. Judgment for plaintiff.

James A. Dunn, for plaintiff.
George L. Rives, Corp. Counsel, for defendant mayor.
Wolf, Kohn & Ullman, for defendant Collins.
James Kearney, for defendant Moran.

GREENBAUM, J. The defendant Collins having a contract with the defendant the mayor, aldermen, and commonalty of the city of New York for the regulating and grading of Jerome avenue, in the said city, entered into an agreement with the plaintiff whereby the latter was to furnish certain material to be used upon this work. For the sum claimed to be due him under his contract with Collins, the plaintiff, on March 6, 1897, filed a mechanic's lien under the provisions of the New York City consolidation act then in force (Laws 1882, pp. 439–441, c. 410, §§ 1824–1838), and this suit was brought to foreclose the lien so filed. The lien was discharged by order after suit had been begun upon the filing of an undertaking. Upon a previous trial the complaint was dismissed at Special Term. The judgment of dismissal was affirmed by the Appellate Division (58 App. Div. 73, 68 N. Y. Supp. 462) and reversed by the Court of Appeals (170 N. Y. 409, 63 N. E. 437). Upon this trial the case was submitted upon the evidence taken at the first trial as the same appears in the case on appeal, and upon the testimony of the defendant Moran taken out of court and submitted under stipulation. The defendants now attack the validity of the plaintiff's lien on the ground that the notice of claim was verified by one who described himself as the agent of the plaintiff, and deposed that the statements therein contained "are true to his own knowledge or information and belief," urging that the verification is defective, in that it fails to state that the agent has knowledge of the facts set forth in the notice, or to give the sources of his informa-

¶ **1.** See Mechanics' Liens, vol. 34, Cent. Dig. §§ 263, 264.

tion.   In answer to the objection it should be pointed out that the consolidation act required the claim merely to be verified by his oath or affirmation.   No provision in the consolidation act required the verification which is necessary under the general mechanic's lien law.   It may also be assumed that the Court of Appeals considered the form of verification in this case as sufficient, inasmuch as the official report of the case in that court (170 N. Y. 409, 63 N. E. 437) shows that the authorities relied upon by the defendants in support of their present contention were there cited.   If the Court of Appeals had deemed this point well taken, the lien would have been held ineffective and the judgment affirmed.   That court has held that the lien law was to be liberally construed, and that the verification by the agent was good, and, as the statute provided no form of verification, it will be held sufficient.

The defendants further attack the lien's validity upon the ground that it was not filed within the statutory time.   Section 1825, p. 440, of the consolidation act, provides that the lien may be filed "at any time before the whole work to be performed by the contractor for the city is completed or accepted by the city."   The testimony of the defendant Moran to the effect that work upon the city's contract was done up to August 14, 1897, to wit, after the date of the filing of the lien, shows that the work was not completed when the lien was filed, and sufficiently disposes of this point.

The defendants also urge that the plaintiff had filed a lien previous to the one sought to be foreclosed in this action upon the same claim, and cite, among others, the Special Term case of Clarke v. Heylman (N. Y. L. J., Oct. 21, 1902) in support of the proposition that the first lien precluded the filing of a second.   Counsel evidently overlooked the fact that the Appellate Division reversed the Special Term (80 App. Div. 572, 80 N. Y. Supp. 794) and upheld the validity of the second lien, although for the same claim as that of the former.

The next point urged by the defendants is that this action for a foreclosure is not maintainable because the lien was discharged by the giving of an undertaking pursuant to statute, and because the sureties upon such undertaking were not made parties to the action.   The case of Morton v. Tucker, 145 N. Y. 244, 40 N. E. 3, is cited in support of the proposition that the plaintiff can recover upon the bond only, or in a suit in equity in which the bondsmen are parties.   My understanding of Morton v. Tucker is that, where an undertaking has been given to discharge a mechanic's lien, the bondsmen are not necessary parties to a foreclosure, but may be interpleaded in the suit or be made defendants in a separate action upon the bond.   This conclusion is fortified by the case of Ringle v. Matthiessen, 10 App. Div. 274, 41 N. Y. Supp. 962, affirmed 158 N. Y. 740, 53 N. E. 1131, which was an action upon a bond after a judgment of foreclosure of the lien in an action wherein the bondsmen had not been made parties.

Another defense urged by the defendant Moran is that no lien could have been acquired by the plaintiff, for the reason that before the filing of the plaintiff's notice of claim the defendant Collins had assigned to the defendant Moran his claim and all right and title to the moneys due or to grow due to him from the city of New York.   The testimony

undoubtedly shows an assignment absolute on its face of moneys that would become payable under the contract, and that it was executed before the date of the filing of the lien. It, however, also appears that the assignment is dated January 10, 1896, when there was apparently nothing owing to Moran from Collins; that thereafter Moran furnished materials to the defendant Collins upon the Jerome avenue work of the value of $25,044.13, and made advances of money to him to the amount of $31,859.90, and that he expended in completing the job $551.48; that the aggregate of Moran's claim was $57,455.51, upon which was paid from moneys received from the city under the Collins contract $50,075.99, and that, to quote from Moran's testimony, "I therefore expended on this job $7,879.52 more than I received from all sources." Moran further testified that the material and labor furnished and performed by him was in reliance upon the assignment from Collins, and no testimony was presented that it was intended that the ·assignment was in fact an absolute one between Moran and Collins. It also appears that the defendant Collins, in his contract with plaintiff, agreed to make "such assignments of the payments or moneys due him on his contract by the city of New York as the said McDonald shall require of him in order to secure the payments due him for work done under his contract." It is conceded that at the time of the filing of the lien there was due from the city on the Collins contract upward of $20,000. It is obvious, under all the circumstances disclosed, that it was never intended that the assignment was to be deemed an absolute one, but that, on the contrary, it was taken merely as collateral security for the claims that were to arise in favor of Moran for materials to be furnished and moneys to be advanced. The assignment should therefore be treated as a claim having precedence over that of the plaintiff to the extent of the balance due Moran from Collins, and the lien held available against the balance of upward of $12,000 due to Collins after the discharge of the Moran obligation.

My conclusions upon the points thus far considered preclude the necessity of considering the further point raised by the defendant Collins that the plaintiff cannot recover a personal judgment against him in this action, as I am prepared to hold that the plaintiff is entitled to a decree of foreclosure herein.

It remains only to determine the amount of the plaintiff's claim. The notice of claim charges the defendant Collins with 49,115 cubic yards of fill at 25 cents per yard, amounting to $12,278.75, and extra work amounting to $532.74. A credit of $6,725 is given, leaving a balance alleged to be due of $6,086.49. The testimony offered to establish the full amount claimed was uncertain and inconclusive. The item for extra work was conceded upon the former trial to be correct, and attention need be paid only to the amount of fill proven to have been delivered. The plaintiff's witnesses testified to various figures based upon the measurements taken at different times and under different conditions, but the witness Olmstead stated that 45,831 cubic yards of fill delivered were actually measured by himself. The defendants' witness, the city's engineer, testified to quantities of fill used upon the Jerome avenue job. His testimony, however, was based

upon estimates, which it appeared allowed nothing for fill that sank into the swamp on either side; that it took no account of shrinkage, as to which the contract is silent; that his estimates were based upon a 1 to 1 slope; and that his conclusions rested upon estimates which formed the basis of payment by the city to Collins. The point urged by the defendant Collins that the recovery must be had upon the estimate of the defendants' witness Maloney, the engineer in charge of the work for the city, because of the provision in the contract between McDonald and Collins that payments were to be made on the 20th day of each month upon the estimate furnished by the engineer in charge of the work, is not well taken. That provision simply provided a method of payment during the progress of the work. The defendant has not even furnished proof as to what those monthly estimates were. The plaintiff, under his contract, was entitled to recover the value of the material actually delivered. The only proof that is not purely speculative on the question of amount of fill delivered is that of plaintiff's witness Olmstead that he had actually measured 45,831 cubic yards, and plaintiff's claim will be allowed to this extent. The counterclaims of $71.48 and $289.63 are admitted. The two additional counterclaims of defendant Collins for $160 and $1,013, respectively, will now be considered. It appears that certain claims were made by the proprietors of the Hotel Kensington, whose premises were situated along the route of the Jerome avenue improvement, based upon alleged interference with their hotel business by reason of the tracks used in connection with the hauling of the fill. Collins testified to a conversation with McDonald in which he stated to the latter that the hotel people would be satisfied with $160 in settlement of their claim, and that McDonald told him "to see the people and fix up the thing, and he would make it right" with Collins, and that the payment was thereafter made. This testimony was not refuted. Reference to the contract between McDonald and Collins, however, shows that by its very terms the latter agreed to furnish the necessary permits for laying the tracks on Jerome avenue and to relieve the former from all liability from accidents to persons and property during the continuance thereof. There was therefore no consideration shown upon which a liability against plaintiff may be predicated. The counterclaim of $1,013 represents the cost of distributing the material on Jerome avenue north of the center line of 177th street, for which Collins claims that the plaintiff is liable. It is difficult to understand upon what theory the plaintiff is liable for the cost of distribution when the contract contemplates a mere sale and delivery of the fill and expressly provides that "after the said filling is delivered as heretofore stated, it is agreed that said McDonald's contract is fully completed and ended." The provision that Collins was to distribute the filling delivered south of the center line of 177th street would scarcely justify the inference, in the absence of express provision, that the plaintiff was to distribute filling delivered north of the center line of 177th street.

My conclusions are that the plaintiff's recovery should be based upon 45,831 cubic yards at 25 cents a cubic yard, which I compute to be $11,457.75, and $532.74 for extra work, being a total of $11,990.49, less the credits to which Collins is entitled, to wit, $71.48 and $289.63,

the admitted counterclaims, and $6,725, the amount previously paid to plaintiff, leaving the balance due plaintiff $4,904.38, to which interest from October 1, 1896, should be added. So much of the judgment as shall declare that the plaintiff has a lien shall be in form only and entered for the purpose of enabling the plaintiff to recover on the bond given to discharge the lien. Ringle v. Matthiessen, supra. Provision may also be made in the judgment for application at the foot thereof for deficiency against the defendant Collins.

Ordered accordingly.